[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendants' move to strike counts two, five, and seven through twelve of the plaintiff's complaint; as to counts two and nine on the grounds that the Connecticut Unfair Trade Practices Act (hereinafter "CUTPA"), General Statutes42-110a, et seq., does not extend to internal partnership activities; as to counts five, seven, eight, ten, eleven, and twelve on the grounds that the assertion that the claims set forth in these counts are time-barred is not properly raised by a motion to strike.
The plaintiff in the present action is Bernard Lapuk; the defendants are Robert Simons, Gerald Steinberg, Corporate Center West, Inc. (hereinafter "CCWI"), and J S Development Management Corp. (hereinafter "J S"). On October 19, 1993, the plaintiff filed a twelve count complaint.
In counts one through six of the complaint, the following facts are alleged: By virtue of two separate partnership agreements, entitled "Corporate Center West Associates" (hereinafter "CCWA") and "South Street Associates," the plaintiff and defendants Simons and Steinberg were partners in, and joint owners of, two properties in West Hartford. Defendants Simons and Steinberg actively managed the affairs of these two partnerships. By 1988, the plaintiff had CT Page 3113 developed physical, mental, and emotional health problems of which defendants Simons and Steinberg were aware. In 1990, defendants Simons and Steinberg told the plaintiff that the partnership owed Burritt Interfinancial Bancorporation (hereinafter "Burritt") $3.75 million and that the plaintiff was liable for a share of this debt. Defendants Simons and Steinberg told the plaintiff that he owed them $135,000.00, an amount reflecting money that the defendants had already paid to Burritt. The plaintiff, however, had not signed the Burritt note; defendants Simons and Steinberg had forged the plaintiff's signature on the note. Defendants Simons and Steinberg then told the plaintiff that they would agree to release him from all liability on the Burritt note in exchange for $25,000.00 worth of bank stock and a $12,500.00 note. Out of duress, the plaintiff agreed to this arrangement. Unknown to the plaintiff, however, defendants Simons and Steinberg had an agreement pending for financing on the West Hartford properties for $4.75 million, an amount more than sufficient to cover the debt owed to Burritt.
In the first count of the complaint, the plaintiff alleges that defendants Simons and Steinberg breached fiduciary duties owed to the plaintiff, causing him extreme emotional distress. In the second count, the plaintiff alleges that the actions of the defendants violated CUTPA. In the third count, the plaintiff alleges that the forging of the plaintiff's signature violated General Statutes 52-565. In the fourth and fifth counts of the complaint, respectively, the plaintiff alleges that the defendants' actions give rise to claims for intentional and negligent infliction of emotional distress. In the sixth count, the plaintiff alleges that the defendants knowingly defrauded him and induced him to sign over his partnership interest.
In counts seven through twelve of the complaint, the following facts are alleged[1]: Funds owed to the plaintiff, by virtue of the partnership agreements, were never paid to him, although several disbursements of funds, deriving from mortgage funds and other sources, were made to defendants Simons and Steinberg between 1981 and 1985. An undetermined amount of funds were also disbursed by CCWA to CCWI, a corporation formed to act as a general contractor for CCWA and controlled by defendants Simons and Steinberg. The plaintiff attempted to examine disbursement records relating to these funds, but was told by defendant Simons that these records CT Page 3114 were destroyed. In addition, J S, which was controlled and operated by defendants Simons and Steinberg and occupied rent-free office space in the building owned by CCWA, was paid by CCWA 3% of all monthly revenues. In 1988, defendant Simons told the plaintiff that the plaintiff's interest in the partnership could cause him some financial loss. The plaintiff informed defendant Simons that he would incur $80,000.00 in tax liability if he were to pull out of the partnership at the time; defendant Simons told the plaintiff that he would pay the plaintiff $80,000.00 so he would not incur the tax liability. The plaintiff sold his interest to defendants Simons and Steinberg, who then refinanced the $15 million mortgage, then existing on the properties, to $22 million.
In the seventh count, the plaintiff alleges that defendants Simons and Steinberg breached fiduciary duties owed to the plaintiff. In count eight, the plaintiff alleges that defendants Simons and Steinberg fraudulently induced the plaintiff to sell his partnership interest. In count nine, the plaintiff alleges that the above facts constitute a CUTPA violation. In the tenth count, the plaintiff alleges that the defendants violated General Statutes 52-564. In the eleventh and twelfth counts, respectively, the plaintiff asserts claims for intentional and negligent infliction of emotional distress.
On November 1, 1993, the defendants filed a motion to strike counts two, five, and seven through twelve; this motion was accompanied by a supporting memorandum of law. On November 18, 1993, the plaintiff filed a memorandum in opposition to defendants' motion to strike.
The motion to strike provides the proper means by which to test the legal sufficiency of the complaint. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). The motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). Rather, allegations which are "`merely conclusions of law and absent sufficient alleged facts to support them, are subject to a motion to strike.'" Cavallo v. Derby Savings Bank, 188 Conn. 281, 285, 449 A.2d 986 (1982). "Further, in ruling on a motion to strike, the court must construe the facts alleged in the complaint in the manner most CT Page 3115 favorable to the plaintiff." Rowe v. Godou, 209 Conn. 273,278, 550 A.2d 1073 (1988).
1. Counts Two and Nine
The defendants move to strike counts two and nine on the ground that CUTPA does not extend to the internal business affairs and internal dealings of a partnership. The defendants assert that the internal workings of a partnership do not constitute "trade or commerce," as defined by General Statutes 42-110a(4), and do not result in any injury to consumers or competitors.
The plaintiff counters that a CUTPA cause of action lies in the present case because "the activities complained of involved other business entities and did not take place solely between partners." (Plaintiff's Supplemental Memorandum in Opposition to the Motion to Strike, p. 3). The plaintiff also asserts that in the present action, "there is a potential impact on the welfare of other business entities . . . ." (Plaintiff's Supplemental Memorandum in Opposition to the Motion to Strike, p. 4).
General Statutes 42-110b provides, in pertinent part, that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes 42-110a(4) defines "trade or commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." In order to state a legally sufficient CUTPA claim, the plaintiff must allege that the defendants' acts were committed in the course of "trade or commerce." Quimby v. Kimberly Clark Corp.,28 Conn. App. 660, 669, 612 A.2d 838 (1992).
Several superior court cases have discussed the applicability of CUTPA to partnership activities. In Heller v. North American Rock Co., 3 Conn. L. Rptr. 215 (February 6, 1991, Lewis, J.), the court stated that the dispute between the plaintiff and the defendant in that case could be characterized as "an internal strife of a partnership" and that "the improprieties alleged [were] not referable to the trade or commerce activities of the partnership, but rather to CT Page 3116 alleged acts of malfeasance by [the defendant]." Id., 216. The court further stated that the acts complained of by the plaintiff did not rise to the level of a CUTPA violation because "the damages alleged [were] confined to the partners and the partnership . . . ." Id.
In Chester v. Schatz, Schatz, Ribicoff Kotkin,6 Conn. L. Rptr. 526 (June 3, 1992, O'Neill, J.), the court stated that the plaintiff's allegations did not involve "consumers, clients or third parties, but only the internal workings of a partnership." Id. The court analogized the case to those involving employer-employee relationships, noting that "CUTPA does not apply to disputes involving the employer-employee relationship." Id. In addition, the court favorably cited a Massachusetts Supreme Judicial Court case, in which a definitional provision of the Massachusetts Unfair Trade Practices Act, similar to that of CUTPA, was construed. Id., 527, citing Manning v. Zuckerman, 444 N.E.2d 1262, 1265 (Mass. 1983). In Manning v. Zuckerman, supra, the Massachusetts Supreme Judicial Court stated that "trade or commerce," under the Massachusetts statute, is "`limited to practices that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company.'" Chester v. Schatz, Schatz, Ribicoff Kotkin, supra, quoting Manning v. Zuckerman, supra; see also Visconti v. Cutsinger, 1 Conn. L. Rptr. 386 (March 20, 1990, Allen, J.).
In the instant case, the court finds that the allegations set forth by the plaintiff in counts two and nine involve the internal activities of a partnership and alleged wrongdoing on the part of defendants Simons and Steinberg. Internal partnership activities are not subject to CUTPA scrutiny because they do not involve "trade or commerce" as defined in General Statutes 42-110a(4). Accordingly, viewing the facts alleged in the complaint in the light most favorable to the plaintiff, the defendants' motion to strike counts two and nine is granted.
2. Counts Five, Seven, Eight, Ten, Eleven, and Twelve
The defendants move to strike counts five, seven, eight, ten, eleven, and twelve, on the ground that the causes of action alleged therein are time-barred. While recognizing that statute of limitations defenses, pursuant to Practice CT Page 3117 Book 164, generally must be pleaded as a special defense, the defendants assert that all facts establishing the statute of limitations defenses are agreed upon, and that, under the case of Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 171-72,127 A.2d 814 (1952), the motion to strike on this ground is proper and should be granted.
In opposition to the motion to strike counts five, seven, eight, and ten through twelve, the plaintiff argues that statute of limitations defenses must be specially pleaded pursuant to Practice Book 164. The plaintiff further argues that all facts pertinent to the statute of limitations issue are not agreed upon and that, thus, the motion to strike is not the proper mechanism by which to raise a statute of limitations challenge.
Pursuant to Practice Book 164, the defense that an action is barred by the statute of limitations must be specially pleaded; it is not to be raised by a motion to strike. Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993); see Mac's Car City, Inc. v. DeNigris, 18 Conn. App. 525, 528, 559 A.2d 712 (1989). A motion to strike in this context is inappropriate because it "deprives the plaintiff of an opportunity to reply a new promise, or an acknowledgement" and "might also deprive plaintiff of an opportunity to plead matters in avoidance of the statute of limitations defense." (Citations omitted; internal quotation marks omitted.) Forbes v. Ballaro, supra, 239.
The Connecticut Supreme Court has allowed, however, two limited exceptions to this rule:
 The first is when "[t]he parties agree that the complaint sets forth all the facts pertinent to the question whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to strike] instead of by answer." Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 171-72, 127 A.2d 814 (1956). The second is where "a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced . . . ." DeMartino v. Siemon, 90 Conn. 527, 528-29, 97 A. 765 (1916).
CT Page 3118
Forbes v. Ballaro, supra, 239-40.
In Forbes v. Ballaro, supra, the court elaborated upon the first exception set forth in Vilcinskas v. Sears, Roebuck Co., supra, stating:
 In that case, the parties agreed that all facts necessary to the determination of whether the statute of limitations applied were set forth in the complaint. Therefore, there was no need to wait for an answer to determine if the statute of limitations defense could be avoided if the answer could provide no new information.
Forbes v. Ballaro, supra, 240.
In Forbes v. Ballaro, supra, however, the court stated that "there [was] no such agreement. The complaint did not state facts that the plaintiffs believed would toll the statute of limitations on their claims. The plaintiffs contend[ed] . . . that additional facts are necessary to prove that the claim is not time barred." (Footnotes omitted.) Id., 240-41.
In the present case, the parties have not agreed to all facts necessary to the determination of the statute of limitations issue. Rather, the plaintiff in the present action, like the plaintiffs in Forbes v. Ballaro, supra, claims that additional facts are necessary to establish that his claims are not time-barred. The statute of limitations defenses should be specially pleaded and the plaintiff should be given the opportunity affirmatively to plead in avoidance of the statute of limitations defenses. Accordingly, the motion to strike counts five, seven, eight, ten, eleven, and twelve, on the ground that those claims are time-barred, is denied.
Mary R. Hennessey, Judge